**IT IS ORDERED as set forth below:**

**Date: December 19, 2019**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_/s/ Paul Baisier_
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Paul Baisier**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| In re: | | CASE NUMBER: |
|---|---|---|
| **HANS DAJUNG CHOE,** | | **18-69400-PMB** |
| Debtor. | | CHAPTER 13 |

### ORDER DENYING VILLAGE SQUARE LLC'S
### MOTION TO RECONSIDER DISALLOWANCE OF CLAIM

This matter came before the Court on the *Motion for Reconsideration of Order Disallowing Claim of Village Square, LLC (7-1/7-2)* (Docket No. 45)(the "Motion") filed by Village Square, LLC ("Movant") on September 9, 2019.  In response, Hans Dajung Choe (the "Debtor") filed *Debtor's Response in Opposition to Village Square, LLC's Motion for Reconsideration of Order Disallowing Claim* (Docket No. 52)(the "Response") on October 8, 2019.  The Motion and Response were heard by the Court on October 10, 2019 at 9:45 a.m. (the "Hearing").

**I.　　FACTUAL BACKGROUND**

Movant is a judgment creditor of the Debtor, holding a judgment rendered in Wake County, North Carolina in September/October of 2018 in the amount of $230,042.  The Debtor filed this

Chapter 13 bankruptcy case on November 16, 2018. The bar date to file a proof of claim in this case was January 25, 2019 (the "Bar Date"). *See* Docket No. 6; Federal Rule of Bankruptcy Procedure 3002(c). On November 26, 2018, Movant's North Carolina attorney, Nelson G. Harris ("Mr. Harris"), electronically filed a proof of claim that was intended to be filed in this case but was inadvertently filed by Mr. Harris in the wrong case (Case No. 18-64900) because he transposed the 9 and the 4 in the case number (the "Misfiled Proof of Claim").[1]

Mr. Harris became aware that Movant's claim was not filed in this case when he reviewed his file on January 31, 2019, and he filed a proof of claim in this case that same day, Claim 7-1. He subsequently amended that proof of claim with an amended proof of claim filed on February 1, 2019, Claim 7-2 (the "Late Proof of Claim"), to correct an error in the January 31 proof of claim.[2] In Section 3 of the Late Proof of Claim, Movant indicated that notices to it should be sent care of Mr. Harris at his law firm address (the "Notice Address"). On February 4, 2019, the Debtor filed an *Objection to Proof of Claim Filed by Village Square, LLC on February 01, 2019, in the Amount of $230,042.00, Claim No. 7-1 & 7-2* (Docket No. 18)(the "Objection").

Between February 6, 2019 and February 13, 2019, Mr. Harris discussed the matter with Beau Hays ("Mr. Hays"), the Georgia counsel Mr. Harris engaged for Movant on February 6, 2019.[3] At that time, they prepared and had Mr. Harris execute one of the affidavits that was later

---

[1] This proof of claim was apparently filed by Mr. Harris through the ECF system, as it is electronically and not manually signed by Mr. Harris. The proof of claim is of record in Case No. 18-64900 and lists the name of the Debtor as "Edin Prozorac" (the name of the debtor in that case). The only evidence that the proof of claim relates to the Debtor is the copy of the judgment against the Debtor attached to it as an exhibit. The Prozorac case is a no asset Chapter 7 case, and this was the only claim filed in it.

[2] Claim 7-1 asserted a claim of $2,300,042, apparently adding a zero in the actual amount owed. This was cured in Claim 7-2. Consequently, Movant indicated at the Hearing that it does not object to having Claim 7-1, which is incorrect, disallowed.

[3] Although apparently engaged in February, Mr. Hays has never filed a formal appearance in the case, and only appeared for Movant for the first time when he filed the Motion and appeared at the Hearing. Docket, *passim*.

filed with the Motion. Ultimately, however, they determined that no further action was necessary until an objection to the Late Proof of Claim was filed, but apparently neither of them consulted the docket in the case to see whether such an objection had already been filed (which, of course, it had).

The Objection was served on Mr. Harris at the Notice Address by first class mail. The Objection was originally noticed for a hearing on March 7, 2019 by a notice of hearing filed with the Court and served on Mr. Harris along with the Objection (the "Original Notice").[4] The initial hearing on the Objection was reset to June 6, 2019, by a first re-notice of hearing filed and served on April 17, 2019 (Docket No. 33)(the "First Re-Notice"). The First Re-Notice was served on Mr. Harris by first class mail at the Notice Address.[5] The hearing on the Objection was reset a second time, this time to August 1, 2019, by a second re-notice filed and served on June 6, 2019 (Docket No. 40)(the "Second Re-Notice"; collectively, with the Original Notice and the First Re-Notice, the "Notices"). The Second Re-Notice was served on Mr. Harris by first class mail at the Notice Address. The Second Re-Notice was also served on G. Smedes York, the registered agent for Movant, at his registered address by first class mail. In affidavits filed with the Motion, Mr. Harris denies he ever received the Objection or any of the Notices, and Mr. York denies he ever received the Second Re-Notice.

Movant did not appear at any of the scheduled hearings in opposition to the Objection. With no opposition at the August 1, 2019 hearing, the Objection was sustained by this Court in its

---

[4] These two pleadings were also apparently served on a J. Dennis Morgan at an address in Massachusetts. The Debtor appears to have erroneously thought Mr. Morgan was Movant's registered agent, which he is not. The misdirected service is, of course, irrelevant given the service on Mr. Harris. *See* Fed. R. Bankr. P. 3007(a)(2)(A); *compare to* Fed. R. Bankr. P. 3007(a)(2)(A)(ii)(requiring service of claims objections under Fed. R. Bankr. P. 7004 only on insured depository institutions).

[5] The First Re-Notice was also apparently served on J. Dennis Morgan. *See* fn. 4.

3

*Order on Objection to Proof of Claim of Village Square, LLC (7-1/7-2)*(Docket No. 41)(the "Order"), entered on August 15, 2019. The Order was served by the Clerk of the Court on Mr. Harris at the Notice Address by first class mail and was apparently received. The Order was not appealed and is final.

In the Motion, Movant seeks reconsideration of the Order. Movant asserts that it did not get actual notice of the Objection or the hearings thereon. As to the merits of the Objection, Movant asserts that the Misfiled Proof of Claim should be treated as a timely filed proof of claim, and the Late Proof of Claim should be considered a timely amendment to it. In support of the Motion, Movant cites only to Federal Rule of Bankruptcy Procedure 5005 and Matter of Graham, 290 B.R. 424 (Bankr. N.D.Ga. 2003), in which Judge Bonapfel allowed a late filed proof of claim to amend an initial proof of claim that was indisputably mailed to the clerk's office almost a month before the bar date but for unknown reasons was not recorded on the claims docket. Nowhere in the Motion did Movant apprise the Court of the statute or rule it relies on to ask the Court to reconsider the Order (thus allowing it to reach the merits of the Objection).

In the Response, the Debtor argues that Movant must be proceeding under 11 U.S.C. § 502(j), and Federal Rule of Bankruptcy Procedure 3008,[6] and that Movant is not entitled to reconsideration under that authority. In support of this argument, the Debtor asserts that reconsideration of the Order will prejudice the Debtor and other creditors,[7] that Mr. Harris had

---

[6] At the Hearing, Mr. Hays, who appeared alone for Movant, conceded that the Motion was made under this authority. He also suggested the Court could use its authority under 11 U.S.C. § 105, which the Court declines to do in this case. Movant did not assert that it sought relief from the Order directly under Federal Rule of Bankruptcy Procedure 9024, nor did Movant claim that the Late Proof of Claim satisfies an exception under Federal Rule of Bankruptcy Procedure 3002(c)(1)–(7); however, it does not appear that relief would have been available under those Rules in any event.

[7] The Debtor filed a Chapter 13 plan in this case on November 29, 2018 (Docket No. 13), February 4, 2019 (Docket No. 19), February 6, 2019 (Docket No. 23), February 15, 2019 (Docket No. 27), March 13, 2019 (Docket No. 32), May 31, 2019 (Docket No. 39) and September 7, 2019 (Docket No. 44). Each of these

notice of the bankruptcy case and engaged in unreasonable delay, that Mr. Harris did not act in good faith in filing the Motion, and that Movant received repeated notice at its corporate address. Based on these arguments the Debtor asks this Court to deny the Motion.

## II.     LEGAL BACKGROUND

11 U.S.C. § 502(j) provides that a claim that has been disallowed "may be reconsidered for cause." *See also* Fed. R. Bankr. P. 3008.  Once a disallowed claim qualifies to be reconsidered, Section 502(j) provides that it should be "allowed or disallowed according to the equities of the case." Thus, when evaluating whether the disallowance of a claim ought to be reconsidered, courts are to engage in a two-step analysis to determine (1) whether cause exists to reconsider the claim, and (2) if cause exists, whether the equities of the case permit allowance of the claim.  In re Cagle, No. 07-11689-WHD, 2008 WL 7874772, at *2 (Bankr. N.D. Ga. June 2, 2008)(quoting In re Durham, 329 B.R. 899 (Bankr. M.D. Ga. 2005)).  Importantly, a motion to reconsider, even when viewed liberally, cannot serve as "a stopgap for lack of due diligence or self-made circumstances." U.S. Bank Nat. Ass'n v. U.S. E.P.A., 563 F.3d 199, 208 (6th Cir. 2009).

To demonstrate "cause" exists to reconsider the disallowance of its claim in the Order, Movant must establish (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence that could not have been revealed in time for the original decision, (3) fraud, misrepresentation, or other misconduct of the opposing party, (4) [the Order] is void by operation of law, (5) [the Order] has been satisfied, released, or discharged, or (6) any other reason put

---

plans was served on Movant via service on the Notice Address via first class mail according to certificates of service attached to them.  The last plan, which called for an aggregate distribution to unsecured creditors of $64,396.35, was confirmed on September 18, 2019 (Docket No. 47).  The Chapter 13 trustee explained at the Hearing that the figure to be paid to unsecured creditors in the confirmed plan resolved a number of her serious objections to confirmation (*see* Docket Nos. 17, 25 and 34), and was acceptable to the Chapter 13 trustee because it represented a fifty percent (50%) distribution on filed, allowed unsecured claims, which at the time of confirmation excluded the disallowed claim of Movant.  Adding Movant's unsecured claim to the case would reduce that percentage to around eighteen percent (18%).

forward to justify relief from the [Order]. Cagle, 2008 WL 7874772, at *2; 2 W. HOMER DRAKE, PAUL W. BONAPFEL & ADAM M. GOODMAN, CHAPTER 13 PRACTICE AND PROCEDURE § 18.12 (2d ed. 2014). If Movant can successfully establish one of these factors, the Court, in its broad discretion, may determine that "cause" exists to reconsider its earlier judgment. Snyder v. Internal Revenue Serv., 68 F.3d 468 (5th Cir. 1995)("[T]he bankruptcy court has broad, virtually plenary discretion to determine . . . whether to reconsider 'for cause' either the allowance or disallowance of proofs of claim."); 2 DRAKE ET AL., CHAPTER 13 PRACTICE AND PROCEDURE § 18.12.

In establishing "cause" based on "excusable neglect" in a case where the order in question was entered by default (as it was here), the Court would use a standard akin to the standard for opening a default judgment. Cagle, 2008 WL 7874772, at *4. That would require that (1) [Movant] had a meritorious defense that might have affected the outcome, (2) granting the motion would not result in prejudice to [the Debtor, the Chapter 13 trustee or other creditors]; and (3) a good reason existed for failing to reply to the [Objection]." *Id*.

Once "cause" is established, courts must balance the equities of the case. Cagle, 2008 WL 7874772, at *2; DRAKE ET AL., CHAPTER 13 PRACTICE AND PROCEDURE § 18.12. As a general matter, equitable theories are inappropriate vehicles to circumvent the deadline for filing proofs of claim. In re Smelley, No. BK 05 73529 CMS 13, 2006 WL 2385004, at *7 (Bankr. N.D. Ala. Aug. 3, 2006)(listing cases); In re Durham, 329 B.R. 899, 902 (Bankr. M.D. Ga. 2005). However, in circumstances where "cause" for reconsideration is demonstrated, it is possible that Section 502(j) can be used to allow a late-filed claim that is presented after the bar date, but prior to confirmation. In re Jackson, 482 B.R. 659, 666 n.4 (Bankr. S.D. Fla. 2012). In such circumstances, the use of Section 502(j) to permit a late-filed claim must be backed by the equities of the case. In re Thompson, 570 B.R. 336, 342 (Bankr. E.D. Okla. 2017).

6

**III.    DISCUSSION**

In applying the foregoing standards to this case, it is important to keep in mind precisely what conduct is relevant.  Movant has asked this Court to reconsider the Order.  Consequently, the conduct at issue is Movant's conduct as it relates to the entry of the Order.  Consideration of Movant's conduct related to the filing of the Late Proof of Claim or the Misfiled Proof of Claim is not relevant except to the extent necessary to evaluate whether Movant had a valid defense to the Objection.

Viewed that way, Movant has not successfully established "cause" to reconsider the disallowance of its claim in the Order.  Movant does not allege the existence of newly discovered evidence, fraud, misrepresentation or other misconduct on the part of the Debtor, or the satisfaction, release or discharge of the Order.  Rather, Movant argues only a lack of notice – more specifically, that neither Mr. Harris nor Mr. York actually received the Objection or any of the Notices, and that their failure to receive those items justifies reconsideration.  Couched in the terms of the elements of "cause" set forth above, Movant could be arguing (i) that the Order is void for lack of notice, (ii) that lack of notice is "another reason justifying relief" from the Order, or (iii) that the failure to respond is "excusable" due to lack of notice.

Those arguments are unavailing.  As to the first two (2) arguments, when notifications are mailed to a party's correct address, a presumption of receipt is created that cannot be rebutted by a mere denial of receipt.  In re Bucknum, 951 F.2d 204, 206 (9th Cir. 1991)("If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled."); *see also* Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1239 (11th Cir. 2002); Konst v. Florida E. Coast Ry. Co., 71 F.3d 850, 853–54 (11th Cir. 1996).

7

Further, the core of Movant's assumed argument is that failure to get actual notice violates due process and thereby renders the Order void. That is not, however, the law. Actual receipt of notice by Movant is not necessary to satisfy due process. Dusenbery v. United States, 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed. 2d 597 (2002). Instead, notice to Movant must only be "reasonably calculated under the circumstances to apprise [Movant] of the pendency of the action and afford [Movant] the opportunity to present [its] objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). And this calculation is made at the time that the notice is sent (*i.e. ex ante*). Jones v. Flowers, 547 U.S. 220, 231, 126 S. Ct. 1708, 164 L.Ed. 2d. 415 (2006).[8] In this case, Movant does not allege that the address for Mr. Harris listed on the certificates of service for the Objection, the Original Notice, the First Re-Notice, or the Second Re-Notice is inaccurate. Additionally, Movant concedes that both the address of Mr. Harris and the address of Movant's registered agent, G. Smedes York, were correct and accurate on the Second Re-Notice. In view of these correct addresses and related certificates of service, a presumption of receipt arises that is not adequately rebutted by the affidavits of Mr. Harris's and Mr. York's denying receipt.[9] Further, because the Objection and Notices were sent to Movant by first class mail at admittedly correct addresses, such service is reasonably calculated to apprise Movant of the Objection and the hearings thereon and to afford Movant an opportunity

---

[8] Unlike Jones, there is no evidence here that the Debtor knew that the Objection or any of the Notices had not been received (for example, by having received them back in the mail undelivered), which might have triggered an obligation for further noticing efforts.

[9] Even if it were possible for a bare denial of receipt without more to rebut the presumption of receipt in some circumstances (maybe where one notice was sent one time), the fact that numerous documents (the Objection and the Notices) were sent to Movant in this case, any one of which would have been sufficient to provide Movant adequate notice of the Objection and related hearings, reduces substantially the credibility of the assertions of non-receipt by Movant and prevents the presumption from being rebutted in this case.

8

to present its objections.  This conclusion is bolstered by the fact that the service on Mr. Harris is precisely the service compelled by Federal Rule of Bankruptcy Procedure 3007 with regard to the Objection.  Consequently, a due process challenge to service here fails, and thus so too do the first two (2) potential bases for "cause" described above.

With regard to the third basis for "cause", for this Court to find that "excusable neglect" constitutes cause to reconsider the Order, it would have to find that Movant would have had a meritorious defense to present had it appeared timely in defense of the Objection.  Based on the Response, Movant's response to the Objection would have been that the Late Proof of Claim is an amendment to the Misfiled Proof of Claim, which should be deemed filed (even though it was filed in the wrong case) based on Matter of Graham, *infra*, and such an amendment should relate back to that original misdirected filing, making it timely.  This response fails on both counts.

As noted above, in Matter of Graham, Judge Bonapfel held that a proof of claim indisputably mailed to the clerk's office at the correct address a month before the bar date was deemed received by the clerk's office due to the "mailbox rule" (a rebuttable presumption that a letter that was mailed to the right address with adequate postage was received), and the proof of claim, having been presumed received, was "filed" for bankruptcy purposes even if it was actually never received or it ultimately ended up being filed in the wrong case file.  That proof of claim could then be amended by the creditor's late filed proof of claim, which could relate back to the original "filing."

The presumption applied in Graham is simply not applicable here.  In addition to presumptions regarding the reliability of the United States mail that are not applicable here, Graham is also based on the notion that the creditor did all that it could do to assert its claims timely and should not be penalized because either the Post Office or the Clerk's Office lost the

9

proof of claim.[10]  Here, there are no errors involved except for errors made by Mr. Harris, who filed the claim in the wrong case (and thus with the wrong debtor name on the claim) and then failed to notice his error until after the Bar Date.  This case would be a closer parallel to Graham if the creditor in Graham had mailed the proof of claim to the wrong address, or if the creditor had mailed in a claim like the one actually filed in this case (containing the wrong debtor name and case number), and the Clerk had dutifully put it in the claims register for the wrong case – the case indicated on the proof of claim.  Judge Bonapfel surely would not have found the claim to be timely filed in either of those two circumstances, and this Court does not either.

Further, even if Graham stands for the proposition that the Misfiled Proof of Claim should be deemed to have been timely filed in this case, Movant would still require the Late Proof of Claim to amend it so that it would assert a claim against the correct debtor, and the Late Proof of Claim would have to relate back to the Misfiled Proof of Claim to be timely.  In that respect, this matter is similar to a case where a plaintiff sues a defendant but names and serves the wrong party – an unrelated party with an entirely different name.  In those circumstances, whether the amendment would relate back to the original filing would depend on whether the correct party was aware of the lawsuit before the deadline so as not to have been prejudiced by the delay.  *See* Fed. R. Bankr. P. 7015; Fed. R. Civ. P. 15(c).  In this case, there is no evidence that the Debtor had any idea that the Misfiled Proof of Claim had been filed until well after the Bar Date.  In those circumstances, the corrective amendment (here the Late Proof of Claim) would not relate back to

---

[10] The Court in Graham also seemed to have been substantially influenced by the following facts of that case: (1) under the confirmed plan, all creditors were to get 100% from an inheritance of the debtor, (2) if the otherwise untimely claim were allowed it would also get paid 100% on its $60,000 claim, (iii) if the otherwise untimely claim were disallowed, the debtor would get back the $60,000, and (iv) at the time of the order no distributions had yet been made on general unsecured claims.  The facts are different from this case, where (a) under the confirmed plan all creditors are getting a fixed pool of around $64,000, and (b) if the untimely claim is allowed, the payout to all other claimants will plummet from 50% to 18%.

the original filing and would remain untimely. In Chapter 13, an untimely proof of claim would still be disallowed. *See* 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3002(c); Fed R. Bankr. P. 9006(c)(3).

In addition, even if the Court found that Movant would have had a meritorious defense to the Objection, Movant does not satisfy the second requirement to have the Order reconsidered based on excusable neglect – a lack of prejudice to others. Here there is substantial prejudice to the Chapter 13 trustee (and thus to unsecured creditors) because the Chapter 13 trustee withdrew her objections to the Debtor's fixed pot plan and allowed it to be confirmed based on the payout the pot would create without Movant's claim, which had been disallowed. The Chapter 13 trustee stated at the Hearing that she would not at this point have a basis to attack the confirmation order, and thus would be stuck with the current plan (and a lowered payout if Movant's claim were now allowed). *See* 11 U.S.C. § 1330; Fed. R. Bankr. P. 9024. Consequently, prejudice to others would result from granting the Motion.

In light of the foregoing, "cause" has not been established to reconsider the Order, and thus it is hereby **ORDERED** that the Motion is **DENIED**.

The Clerk is directed to serve a copy of this Order upon Movant, counsel for Movant, Debtor, counsel for Debtor, the Chapter 13 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**